**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 04-cr-0212 |
| | ) | 02: 09-cv-0739 |
| MARTHA BELL | ) | |

**MEMORANDUM OPINION AND ORDER**

May 3, 2010

Presently before the Court for disposition is the MOTION TO VACATE, SET

ASIDE, OR CORRECT SENTENCE PURSUANT TO TITLE 28, UNITED STATES CODE,

SECTION 2255, with MEMORANDUM OF LAW in support filed by counsel on behalf of

Petitioner / Defendant Martha Bell ("Bell") (*Document Nos. 203 and 204*), the RESPONSE in

opposition filed by the government (*Document No. 205*), and the RESPONSE TO

GOVERNMENT'S OPPOSITION filed by Bell (*Document No. 209*).  Bell has also filed her

own Declaration in support of the Motion (*Document No.  208)*.

For the reasons discussed below, the Court will deny the § 2255 motion without

holding an evidentiary hearing.

The relief sought under 28 U.S.C. § 2255 is reserved for extraordinary

circumstances.  *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).  Section 2255 provides, in

relevant part:

> A prisoner in custody under sentence of a [federal] court . . .  claiming the
> right to be released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United States, or that the court
> was without jurisdiction to impose such sentence, or that the sentence was
> in excess of the maximum authorized by law or is otherwise subject to
> collateral attack, may move the court which imposed the sentence to
> vacate, set aside or correct the sentence.

Although § 2255 includes a provision for a prompt evidentiary hearing, a federal court may deny a § 2255 motion without holding an evidentiary hearing if the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief.  28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255.

### Procedural and Factual Background

The parties and the Court are familiar with the extensive background facts of Bell's criminal prosecution, conviction, and sentence.  Therefore, the Court will not detail the facts again.  However, the following is a brief recitation of the procedural facts salient to the issues presently pending before the Court.

On August 24, 2004, a federal grand jury in the Western District of Pennsylvania returned an eleven-count indictment against Bell and Atrium I Nursing and Rehabilitation Center ("Atrium").   Both defendants were charged with one count of Health Care Fraud (Count One), in violation of Title 18, United States Code, Sections 1347 and 2, and ten counts of False Statements Relating to Health Care Matters (Counts Two through Eleven), in violation of Title 18, United States Code, Section 1035(a)(2).

According to the Indictment, both defendants knowingly and willfully executed and attempted to execute a scheme and artifice to defraud health care benefit programs, that is Medicare and Medicaid, and to obtain, by means of false and fraudulent pretenses, representations and promises, money under the control of such health care benefit programs, in connection with the delivery of and payment of health care benefits, items, and services.  *See* Indictment, at ¶ 12.

2

The Indictment further charged that both Defendants: (a) falsely represented that the required care, services and environment would be provided to residents; (b) failed to provide such care, services and environment; and (c) falsely represented that these requirements had been provided.

A jury trial commenced on July 19, 2005.  During trial, Bell was represented by attorney Thomas R. Ceraso.  On August 24, 2005, the jury rendered a unanimous verdict as to each defendant.  Defendant Bell was found guilty on Counts One, Two, Three, Four, Five, Six, Eight, Ten and Eleven, and Defendant Atrium was found guilty on all eleven (11) counts of the indictment.

On November 18, 2005, the Court denied the Defendants' motions for judgment of acquittal and, on April 12, 2006, denied their motions for reconsideration of the November 18, 2005 decision.

On May 16, 2006, the Court denied Atrium's and Bell's motions for a new trial based on the government's alleged violations of *Brady v. Maryland,* 373 U.S. 83 (1963).

On October 27, 2006, a sentencing hearing was conducted at which time Defendant Bell was sentenced to sixty (60) months imprisonment at all counts (to run concurrently) to be followed by three (3) years of supervised release and a $50,000.00 fine.  (Atrium was sentenced to five (5) years of concurrent probation at each count and a $490,000.00 fine.)

On November 1, 2006,  Defendant filed a timely Notice of Appeal to the United States Court of Appeals for the Third Circuit. On November 2, 2006, Attorney Ceraso filed a Motion to Withdraw as counsel, which motion was granted on November 3, 2006.  On

February 15, 2007, attorney Thomas N. Farrell entered his appearance as counsel for both Bell and Atrium.

On appeal, Bell, through counsel, challenged the sufficiency of the evidence as to her convictions on Counts One and Three and claimed violations of *Brady v. Maryland*, 373 U.S. 82 (1963).  On June 6, 2008, the appellate court affirmed Bell's conviction and sentence.  *See United States v. Bell*, No. 06-4648  4649, slip op. (3d Cir. June 6, 2008), *cert. denied*, -- U.S. ---, 129 S.Ct. 425 (2008).   In its Opinion, the appellate court presented the relevant facts as to Count I as follows:

> [T]he record amply supports that Bell knowingly engaged in a scheme
> with the specific intent to defraud Medicare and Medicaid in connection
> with both the delivery of and payment for health care benefits, items, and
> services.  For example, Bell directed Atrium's employees to falsify records
> so that they did not accurately reflect the deplorable conditions at Atrium.[1]
> The falsified records were then provided to the Pennsylvania Department
> of Health ("DOH") for the specific purpose of deceiving it into believing
> that Atrium complied with applicable regulations, so that Atrium would
> maintain its certification under Medicare and Medicaid and, hence, the
> flow of government money.  Bell was properly found guilty of health care
> fraud "based upon a scheme to falsify records" that she used "in an attempt
> to conceal from state and federal regulatory agencies the substandard care

---

[1]     The Court of Appeals noted, "[a] detailed recounting of the depredations Bell inflicted on Atrium residents is unnecessary.  Suffice it to say that the accounts are genuinely heartbreaking - accounts of helpless, elderly and infirm residents left to lie in their own waste, one with an empty oxygen canister, another with undissolved medication in her mouth for hours, another with bruises and open sores, and so on and on, all being left with no protection from the violent outbursts of other senile and understandably frustrated residents, and this while Bell lined her pockets and left vendors unpaid.  The temporary administrator who took over management of the facility from Bell indicated that, though he had taken over other problem facilities in the past, he had never seen anything like the conditions he encountered at Atrium."  Slip op. at 4-5, n.4.

which was being provided to residents at Atrium." *Bell I,* 2006 WL
952214 at *2.  Sufficient evidence supports Bell's conviction on Count I
of the indictment.

*Bell*, slip op. at 4-5.

As to Count III, the appellate court reported the relevant facts as follows:

On the evening of October 25, 2001, Taylor wandered into
Atrium's courtyard and could not get back into the building because the
doors were malfunctioning.  She was found dead in the courtyard at 4:00
a.m. on October 26, 2001.  On October 29, 2001, Bell asked Harold
Whipkey, an Atrium employee, to prepare a written statement that he saw
Taylor inside on the night that she died.  Whipkey complied and prepared
two statements to that effect.  However, Bell knew full well that
Whipkey's statements were false and that he was actually at a bar on the
evening that Taylor died.

Bell argues that Whipkey's false statements did not "involv[e] a
health care benefit program" because they were made "in relationship to
the police investigation and had nothing to do with health care or a health
care benefit program."  (citation omitted)  However, Whipkey's false
statements were provided to the DOH in connection with its abuse
investigation after Taylor's death, thereby implicating Atrium's receipt of
Medicare and Medicaid funding.  Further, Atrium was a qualifying "health
care benefit program" because it was receiving funds under Medicare and
Medicaid, and Whipkey's false statements obviously related to care given
- or not given - by Atrium.  As the government points out, the "false
statements at issue concerned health care services that had been provided
to Ms. Taylor at Atrium on the night of her death.  Thus, the false
statements were in fact made in connection with the delivery of health care
services, as is required to sustain a conviction under § 1035(a)(2)."
(citation omitted)  Viewing the evidence in the light most favorable to the
government, it is clear that there is sufficient evidence to sustain Bell's
conviction on Count 3 of the indictment.

Slip Op. at 6-7.  As for the *Brady* violations that Bell alleged, the appellate court found that the

district court did not err as a matter of fact or law in reaching the conclusion that Bell had failed

to establish any *Brady* violation.

On September 8, 2008, Bell filed a Petition for Writ of Certiorari to the United States Supreme Court, which Petition was subsequently denied on October 14, 2008. *See Bell v. United States*, 129 S.Ct. 425 (2008).

On June 8, 2008, attorney Cheryl J. Sturm entered her appearance as counsel for Bell. On that same day, Bell, through counsel, timely filed the instant motion in which she raises a number of ineffective assistance of counsel claims against her trial and appellate attorneys.

## Evidentiary Hearing

Under 28 U.S.C. § 2255, a judge must determine whether to summarily dismiss the petition under Rule 4(b) of the Rules Governing § 2255 Proceedings ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."), or to order an evidentiary hearing under Rule 8 of the Rules Governing § 2255 Proceedings.

A district court should hold an evidentiary hearing in section 2255 cases unless "the motion, files and records show conclusively that the movant is not entitled to relief." *United States v. Nahodil*, 36 F.3d 323 (3d Cir. 1994). In deciding whether to hold a hearing, the trial court judge may draw upon his own personal knowledge and recollection of the trial when considering the factual allegations of a § 2255 motion that relate to events that occurred in the judge's presence. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1077 (3d Cir. 1985).

After reviewing the filings in this case, the complete record, and drawing upon the Court's personal knowledge and recollection of the events that occurred in its presence, the Court finds that an evidentiary hearing is not required because Bell has failed to raise any genuine issue of material fact. *See United States v. Essig*, 10 F.3d 968, 976 (3d Cir. 1993). Additionally, the files and records of the case conclusively establish that Bell is not entitled to relief. *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005). Therefore, the Court will proceed to the merits of the § 2255 motion.[2]

### Standard of Review

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel and exists "in order to protect the fundamental right to a fair trial." *Lockhart v. Fretwall*, 506 U.S. 364, 368 (1993) (*quoting Strickland v. Washington*, 466 U.S. 668, 684 (1984)).

The United States Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  (i) whether counsel's performance was unreasonable; and (ii) whether counsel's unreasonable performance actually prejudiced the defense. *Strickland,* 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's

---

[2]  "When a motion is made under § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court." *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

conduct. *Id.* at 690.  A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The first prong of the *Strickland* test requires that a defendant establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id*. at 689.  The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Id.*

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. *Id*.  To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Id.*

The Court of Appeals for the Third Circuit has endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance prong "because this course of action is less burdensome to defense counsel." *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005); *see Strickland*, 466 U.S. at 694 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong

"to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result").

Furthermore, the United States Supreme Court has determined that under the *Strickland* test, a reviewing court must "assess counsel's overall performance throughout the case to determine whether the 'identified acts or omissions' overcome the presumption  that counsel rendered reasonable professional performance."  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

## Discussion

As stated *supra,* all of Bell's claims involve the alleged ineffectiveness of her trial and appellate counsel.  Bell alleges that their representation was constitutionally ineffective for a myriad of reasons, many of which overlap.

Bell alleges that (i) her "conviction was obtained and/or sentence imposed in violation of the Sixth Amendment to the Constitution of the United States, specifically, the right to the assistance of counsel and right to effective assistance of counsel at all critical stages of the criminal proceedings; and (ii) that her "conviction was obtained and/or sentence imposed in violation of the Fifth and Sixth Amendments to the Constitution of the United States, specifically the right to due process of law and equal protection of the laws."  Memo. at 1. While the Court is of the opinion that the § 2255 could be disposed of on the strength of the evidence adduced at trial alone, in an abundance of caution, the Court will address seriatim each of Bell's specific claims of ineffective assistance of counsel.

**A.**      **Ground One -  Alleged Sixth Amendment Violations[3] -  "The Conviction Was Obtained and Sentence Imposed in Violation of the Right to Effective Assistance of Counsel at All Critical Stages"**

      1.      <u>Failure of Trial Counsel to Object To the Testimony of Mark Irwin, Administrator of Grane Health Care</u>

Bell contends that her trial counsel should have objected to the testimony of Mark Irwin because it (i) related to facts outside the indictment period and (ii) was "expert" testimony given without prior notice.  The Court finds that Bell's arguments are without merit.

Mark Irwin ("Irwin"), Administrator of Grane Health Care, followed Martha Bell as administrator of Atrium.[4]  He testified that from October 22, 2003 until January 4, 2004, he served as interim administrator of  Atrium and he provided factual testimony as to the conditions he encountered at Atrium upon replacing Bell.

For example, Irwin testified that he reported to DOH and DPW that Atrium had insufficient staff, insufficient supplies, and insufficient medicines.  Irwin also testified that the scales were not working; there was no wound care program in place; and equipment was not functioning.  Seven wall air conditioners were out of service.  Heaters were not working.  The alarm system would ring to an unmanned nurses' station.  There were no financial controls; Atrium had $1.7 million in overdue bills.  Irwin testified that there was "intentional and

---

[3]      The Sixth Amendment provides, in pertinent part, as follows:  "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."

[4]      Because of the numerous and significant problems that had occurred and continued to resurface at Atrium, the DOH filed suit in state court in which it requested that the operations of Atrium be transferred to another nursing home affiliate, Grane Health Care.  A state court granted the petition, and on October 22, 2003, Grane Health Care took over the operations of Atrium.

systematic" depletion of assets and resources; that "gross mismanagement" had placed the residents of Atrium in immediate jeopardy; and that a ban on admissions would affect Atrium's ability to pay its bills.

Irwin's testimony was relevant to show the conditions at Atrium at the end of Bell's tenure.  The government did not present Irwin as an expert witness, nor should it have.  To the extent that Irwin's testimony contained any opinions, such testimony was admissible under Federal Rule of Evidence 701, which permits lay witness opinions "which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702."

The government also represents that defense counsel had received substantial notice with regard to the nature of Irwin's testimony.  He was not called as a witness until August 10, 2005 and the substance of his testimony - contained in Irwin's October 30, 2003, letter to the Pennsylvania DOH - was provided to defense counsel with other Jencks material on July 8, 2005, approximately ten (10) days prior to the commencement of the trial.

The Court finds that Bell's argument is without merit and will be denied.


2.      Failure of Trial Counsel to Object to Various Jury Instructions

The Court notes that each of the instructions to which Bells objects had been proposed by the government based on Federal Jury Practice and Instructions, K. O'Malley, J. Grenig, and W. Lee, Fifth Edition.  At the time the Bell case went to trial, the Third Circuit Model Criminal Jury Instructions had not yet been published.

"A particular jury instruction may not be judged 'in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Flamer v. Delaware*, 68 F.3d 736, 752 (3d Cir. 1995)(*quoting Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).  Keeping this instruction in mind, the Court will proceed to address seriatim each of Bell's contentions that her trial and appellate counsel were ineffective for failing to object to allegedly insufficient and/or erroneous jury instructions.

a. *Failure of Trial Counsel to Request a Ratzlaff Willfulness Instruction*

Under the authority of *Ratzlaf v. United States*, 510 U.S. 135 (1994), Bell contends that her trial counsel should have requested a "deliberate" instruction in connection with the health care fraud charges filed against her -- *i.e.,* that the charge should have been construed to convey that there could be no conviction absent proof that Bell acted deliberately with knowledge that her conduct was unlawful.  In *Ratzlaf*, the United States Supreme Court held that to establish that a defendant had willfully violated the statute prohibiting the structuring of financial transactions to avoid currency reporting requirements, the government had to prove that the defendant acted with knowledge that his conduct was unlawful.

The health care fraud statute, 18 U.S.C. § 1347, provides in pertinent part:

Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice -

(1) to defraud any health care benefit program; or

(2)  to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,

> in connection with the delivery of or payment for health care benefits,
> items, or services, shall be fined under this title or imprisoned not more
> than 10 years, or both . . . .

The Court instructed the jury that "[a] person acts willfully, . . ., when that person acts deliberately, voluntarily, and intentionally."  Transcript of Charge to the Jury and Closings on August 22, 2005 at 27 (hereinafter referred to as "Charge").  This instruction was taken verbatim from 2A Federal Jury Practice and Instruction, § 40.14.  The United States Court of Appeals for the Third Circuit has not explicitly defined the term "willfully" for purposes of Section 1347.

In cases decided after Bell's trial, other circuits have defined the term "willfully," in the context of health care fraud, to require a showing that the defendant acted with knowledge that his or her conduct was unlawful.  *See, e.g., United States v. Awad*, 551 F.3d 930, 938-41 (9th Cir. 2009); *United States v. Franklin-El*, 554 F.3d 903, 908 (10th Cir. 2009) (court finds sufficient evidence that defendant acted with knowledge that conduct was unlawful by billing for services not rendered and including other false information on claim forms).  In *United States v. Awad*, the appellate court held that the instructions given at trial were erroneous because they "told the jury exactly the opposite of the Supreme Court's definition of 'willfully' . . . ." 551 F.3d at 938.  The instructions in *Awad* stated:  "The government is not required to prove that the defendant knew that his acts or omissions were unlawful." *Id.* at 939 (emphasis added).

Nevertheless, the appellate court in *Awad* determined that any error in the instructions was harmless beyond a reasonable doubt based on three different reasons.  First, the certification on each of the claims that defendant submitted to Medicare informed him that

13

"any false, incomplete or misleading information" could subject him to criminal liability and punishment. *Id.* at 940. Second, the jury instructions required proof that the defendant acted with an "intent to deceive or cheat." *Id.* Consequently, "[n]o reasonable jury could have found that a physician intended to deceive or cheat the Federal Government but did not know that such conduct is unlawful, especially in light of the warnings on the claim forms." *Id.*[5]

In this case, the problematic statement that was the subject of the *Awad* case was not a part of the instructions given to the Bell jury. This Court defined "willfully" as follows: "A person acts willfully, as that term is used in these instructions, when that person acts deliberately, voluntarily, and intentionally." (Charge at 27.) The Court did not instruct the jury that the Government had to prove that Bell knew her conduct was unlawful, and none of the parties requested such an instruction.

For the same reasons that the *Awad* appellate court found such an omission to be harmless, this Court also finds that any failure by Bell's trial counsel to request such an instruction did not result in prejudice to Bell. As in *Awad,* this Court instructed the jury that it was required to find that Bell acted with an "intent to defraud," which required proof that Bell acted "knowingly and with the intention or purpose to deceive or to cheat." Charge at 28.

Moreover, the scheme for which Bell was convicted in this case, as in *Awad*, was a simple one, despite Bell's protestations to the contrary. The jury found that Bell directed Atrium's employees to falsify records so that they did not accurately reflect the deplorable

---

[5]     The *Awad* court also noted that the trial court gave a "good faith" instruction, and that by finding the defendant guilty, "the jury necessarily rejected the argument that Defendant acted with a good faith belief that his acts were lawful." 551 F.3d at 941. The Court in *Bell* did not give a good faith instruction.

14

conditions at Atrium.  The falsified records were then provided to the Pennsylvania DOH for

the specific purpose of deceiving it into believing that Atrium complied with the applicable

regulations, so that Atrium would maintain its certification under Medicare and Medicaid.  Slip

Op. at 4-5.  Thus, it is not reasonable for the Court to find that the Bell jury concluded that Bell

was not aware that her conduct was unlawful.

      For these reasons, the Court finds that Bell was not prejudiced by any failure of her

trial counsel to request a *Ratzlaf* willfulness instruction. Thus, the Court finds that Bell's

argument is without merit and will be denied.

              b.  *Failure of Trial Counsel to Object to the Two-Inference Instruction*

      Bell argues that the jury instructions regarding reasonable doubt set forth a "two-

inference" which "misleads the jury into thinking the government's burden is lower than the

beyond a reasonable doubt standard [and] because it provides the jury with no direction how to

decide a case where the proof of guilt is strong but not strong enough to constitute proof

beyond a reasonable doubt."  Memo. at 35.

      In instructing a jury at the conclusion of a criminal trial, a court must convey the

burden of proof of reasonable doubt.  *United States v. Isaac,* 134 F.3d 199 (3d Cir. 1998).  To

determine whether a trial court has adequately conveyed the burden of proof to a jury, the

reviewing court must consider the instructions as a whole.  Due process is satisfied if the

instructions as a whole accurately convey the concept of reasonable doubt to a sitting jury.  *Id*.

      In Bell's criminal case, the Court provided detailed jury instructions to the jury.  The

relevant portion of the Court's jury instructions which defined reasonable doubt is as follows:

I instruct you that you must presume the defendants to be innocent of the crimes charged. Thus, the defendants, although, accused of crimes in the indictment, begin the trial with a clean slate, with no evidence against them. The indictment, as you already know, is not evidence of any kind.

The defendants, of course, are not on trial for any act or crime not contained in the indictment. The law permits nothing but legal evidence presented before the jury in Court to be considered in support of any charges against the defendants. The presumption of innocence alone, therefore, is sufficient to acquit the defendants.

The burden is always on the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant, because the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. A defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.

It is not required, however, that the government prove guilty beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

Unless the government proves, beyond a reasonable doubt, that defendants have committed each and every element of the offenses charged in the indictment, you must find the defendants not guilty of the offenses. If you, the jury, view the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, you must, of course, adopt the conclusion of innocence and return a verdict of not guilty. You must remember that a defendant is never to be convicted on mere suspicion or conjecture.

Charge at 17 (emphasis added).[6]

---

[6]    The one sentence "two-inference" instruction was taken verbatim from <u>1A Federal Jury Practice and Instructions.</u> The Court notes that the "two-inference" instruction does not appear in the subsequently published Third Circuit Model Criminal Jury Instruction on Presumption of Innocence; Burden of Proof; Reasonable Doubt

`(continued...)`

Bell puts directly in question the underlined portion of the above jury instructions -- specifically, the "two-inference" portion.  In *United States v. Isaac,* 134 F.3d 199 (3d Cir. 1998), the United States Court of Appeals for the Third Circuit considered a trial court's reasonable doubt jury instruction, which closely mirrors the instructions given in Bell's case. In particular, the "two-inference" language in Bell's jury instructions closely mirrors the "two-inference" language at issue in the *Isaac* case.[7]  In *Isaac,* our appellate court held as follows:

> Although we disapproved of the 'two-inference' instruction in [*United States v. Jacobs*] we did not hold that the instruction was so constitutionally deficient *per se* that it infected the entire instruction on reasonable doubt.

Ultimately, the appeals court upheld the instruction and found that the trial court had "adequately" conveyed the government's burden of proof as the jury instructions repeatedly stated that the government was required to prove its case beyond a reasonable doubt, and that the jury instructions, taken as a whole, were not constitutionally defective.  *Isaac*, 134 F.3d at 204.

With regard to the jury instructions at bar, this Court finds that the instructions as a whole provided the jury with a full understanding of the definition of the reasonable doubt standard and that the government was required as a matter of law to prove its case beyond that standard.  Specifically, the instructions informed the jury that Bell and Atrium were to be

---

[6](...continued)
3.06.

[7]   In *Isaac*, the two-inference language at issue was as follows:  "So if the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should, of course, adopt the conclusion of innocence."

presumed innocent unless proven guilty beyond a reasonable doubt.  The jury was instructed as to what could constitutes reasonable doubt.  The jury was also instructed that reasonable doubt did not mean a of finding of guilt beyond all possible doubt.

The Court finds and rules that these instructions rectified any deficiencies the "two-inference" instruction may have presented.  Additionally, the instructions closely follow the jury instructions utilized in *Isaac*, which were found to be, taken as a whole, sufficient to satisfy constitutional due process.

As such, the Court ultimately determines that the jury instructions regarding reasonable doubt delivered in Bell's trial were adequate and Bell's trial counsel cannot be found to have been ineffective for failing to object to the two-inference aspect of the instructions.  Thus, the Court finds that Bell's argument is without merit and will be denied.

c. *Failure of Trial Counsel to Object to the Instruction on Credibility of Witnesses*

Relying upon *United States v .Gaines*, 457 F.3d 238 (2d Cir. 2006), Bell argues that the trial judge's "interested witness" instruction "unfairly disparaged the credibility of defendant in a case that hinged on credibility determinations."  Memo. at 36.  The Court finds this argument to be unavailing.  The charge given in the Bell case is sharply distinguishable from the one given in *Gaines*.  In *Gaines*, the charge in question read:  "Obviously, the defendant has a deep personal interest in the result of his prosecution.  This interest creates a motive for false testimony and, therefore, the defendant's testimony should be scrutinized and weighed with care."  *Gaines,* 457 F.3d at 246.

The instruction given in the Bell case does not share that defect.  The Court instructed the jury on the credibility of witnesses as follows:

In order to arrive at the true facts, and draw the reasonable and proper inferences therefrom, you must pass upon the credibility, that is, the believability, of each witness.  You must determine whether the story of a witness is entirely true or entirely false or mistaken, or partly true or partly false or mistaken.  You judge this from the attitude, demeanor and comportment of the witness while on the witness stand; the manner in which they responded to questions; the reasonableness or unreasonableness of their testimony; their relationship to the parties, if any; their degree of [intelligence]; the strength or weakness of their recollections; the personal interest  a witness might have in the outcome of the case which might lead him or her to color the testimony; the bias or prejudice a witness might have in favor of or against one party or another because of his or her relation or connection with a party.

This is not to suggest that any of those factors would lead a witness to tell you a falsehood or color his or her testimony one way or the other.  But bear these factors in mind when passing on the credibility of each witness.

You should consider whether the witness gave frank and straightforward answers to the questions or whether the answers were evasive or misleading.  You should consider the credibility of a witness in the light of contradictory testimony, if any.

In considering the evidence you may find inconsistencies.  Even actual contradictions in the testimony of witnesses do not necessarily mean that a witness has been willfully false.  Poor memory is not uncommon.  Sometimes a witness forgets. Sometimes he or she remembers incorrectly.  It is also true that two persons witnessing an incident may see or hear it differently.

If different parts of the testimony of any witness or witnesses appear to be inconsistent, you the jury, should try to reconcile the conflicting statements, whether of the same or different witnesses, and you should do so if it [can] be done fairly and satisfactorily.

If, however, you decide that there is a genuine and irreconcilable conflict of testimony, it is your function and duty to determine which, if any, of the contradictory statements you will believe.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

If you decide that a witness has deliberately falsified his or her testimony on a significant point, you should take this into consideration in deciding whether or not to believe the rest of his or her testimony.  And you may refuse to believe the rest of his or her testimony, but you are not required to do so.

<u>You should judge the testimony of defendant Martha Bell in the same manner as the testimony of any other witness in this case.</u>

Charge, 13 - 15 (emphasis added).

No witness, including the Defendant, was identified by the Court as one with an interest in the outcome of the case.  Furthermore, the instruction given was taken almost verbatim from <u>Federal Jury Practice and Instructions</u>, §§ 15.01 and 15.12. [8]

The Court finds and concludes that the credibility of witnesses instruction in no way "disparaged the credibility of the defendant" and Bell's trial counsel cannot be found to be ineffective for failing to object to this instruction. Thus, the Court finds that Bell's argument is without merit and will be denied.

---

[8]   Coincidentally, the instruction used by the Court is consistent with the Third Circuit Model Criminal Jury Instruction 4.28, published after the trial in this case, which reads as follows:  "In a criminal case, the defendant has a constitutional right not to testify.  However, if *(he)(she)* chooses to testify, *(he)(she)* is, of course, permitted to take the stand on *(his)(her)* own behalf.  In this case, *(name of defendant)* testified. <u>You should examine and evaluate (his)(her) testimony just as you would the testimony of any witness.</u>"  (emphasis added)

d. *Failure of Trial Counsel to Object to the Honest Services Instruction*

Bell argues that her trial counsel was ineffective for failing to object to the "honest services instruction," as same is only appropriate when the defendant and the victim have a fiduciary relationship.

The Court instructed the jury on "scheme or artifice to defraud," in pertinent part, as follows:

> And four, the scheme or artifice was executed in connection with the delivery or payment for health care benefits, items or services.

> The terms, any scheme or artifice to defraud and any scheme or artifice for obtaining money or property, as used in these instructions, means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another of something of value. . . .

> A scheme or artifice to defraud includes a scheme to deprive another person of tangible, as well as intangible property rights.  Intangible property rights means anything valued or considered to be a source of wealth, including, for example, the right to honest services and the right to decide how one's money is spent. . . .

Charge at 25 - 27 (emphasis added).

This instruction derived from 2A Federal Jury Practice and Instruction, § 47.13.  At the time of the Bell trial, the United States Court of Appeals for the Third Circuit had not addressed the issue of whether the existence of a fiduciary relationship was an element of honest services fraud.  However, at the time of trial, the Court of Appeals for the Eighth Circuit and the Court of Appeals for the Second Circuit had both concluded that the existence of a fiduciary relationship was not an element of honest services fraud.  *See United States v. Ervasti*, 201 F.3d 1029, 1036 (8th Cir. 2000) and *United States v. Sancho*, 157 F.3d 918, 921 (2d Cir. 1998).

21

On October 22, 2009, almost three years to the day that Bell was convicted, the Court of Appeals for the Third Circuit issued its opinion in *United States v. McGeehan*, 584 F.3d 560 (3d Cir. 2009).  In that case, our appellate court held, *inter alia*, that the duty of honest services did <u>not</u> extend to breaches of non-fiduciary contractual duties.  *McGeehan,* 584 F.3d at 572.

The portion of the jury instructions that Bell challenges amounts to a one-clause reference - an example of intangible property - in the Court's three-page instruction on "scheme or artifice to defraud."  The Court finds that the instructions as a whole provided the jury with a full understanding of the definition of "scheme or artifice to defraud" and that the jury instructions, taken as a whole, were not constitutionally defective.

Further, the Court finds that Bell's argument that "[t]here was a reasonable probability that if trial counsel had objected to the instruction, the outcome would have been different" is wholly without merit.  In light of the substantial evidence supporting the government's case, even if counsel had raised Bell's suggested objection, the Court finds and rules that there is no reasonable likelihood that the result would have been different.  The Court finds that Bell's argument is without merit and will be denied.

> e.    *Failure of Trial Counsel to Object to the Inclusion of Reckless Indifference*

Counts 2 - 11 of the Indictment charged Bell with "knowingly and willfully" making or causing to be made false, fictitious and fraudulent statements.  Without citing any authority, Bell argues that the Court erred when it included the term "reckless indifference" in its definition of the term "false or fraudulent pretenses, representations, or promises."   This argument can be summarily rejected.

The instruction given by the Court was taken verbatim from 2A  Federal Jury Practice and Instruction, § 47.13.  The instruction in its entirety provided the jury with a full understanding of the definition of "false or fraudulent pretenses, representations, or promises." Specifically, the instruction informed the jury that the statement must concern a material or important fact that was either known to be untrue at the time it was made or used, or that was made or used with "reckless indifference" as to whether it was, in fact, true or false, and made with the intent to defraud.  Bell has presented no authority to support her position that this instruction was deficient.  Consequently, the Court cannot find that trial counsel's failure to object to a standard jury charge, which was not defective, rendered his performance deficient.

Bell further argues that the "testimony establishing guilt was not overwhelming. Practically any instructional error could have made the difference between conviction and acquittal."  Memo. at 38.  While Bell may believe the testimony establishing her guilt was not overwhelming, the jury found, and both this Court and the Court of Appeals for the Third Circuit have separately observed, that the evidence of Bell's guilt in this case was indeed overwhelming.

The evidence presented by the government in this case included  the following. Testimony from investigators and an auditor from the U.S. Department of Health and Human Services that Atrium had been cited for problems beginning in 1997 and had an ongoing history of violations from 1999 through 2003.  Department of Health officials visited Atrium twenty-five (25) times between July 2001 and June 2002.  On September 19, 2003, the facility was cited for two "patterns of actual harm," which occurred between April 2, 2003, and September

12, 2003. On October 22, 2003, Grane Healthcare was court-appointed to assume temporary management of the facility.  The residents were relocated and Atrium was closed at the end of 2003.

The government also presented the testimony of approximately twenty-three (23) former employees, nine (9) individuals who testified as to the level of care rendered to their loved ones while residents at the Atrium facility, a nursing home ombudsman who responded to complaints, three (3) doctors, five (5) vendors, and the Grane Healthcare temporary administrator.  Half of the employees testified that they were directed by Martha Bell to falsify various resident records.  The falsification of records included admission records, forged physician signatures on various records, altered times on medication administration records, altered dates on test orders, weight measurements of residents, falsified "activities of daily living" for individual residents, falsified records of hydration flushes, falsification of dates and times of employees job and duty records, and the withholding or removal of certain records during the state health department surveys.

Both former employees and family members of residents testified as to the overall poor healthcare environment at Atrium and they made observations of deficient care. Testimony and records also revealed that staffing levels were, at times, inadequate under the circumstances.

Given the state of the record as outlined above, including the testimony of various witnesses, the Court cannot agree with Bell's argument that "testimony establishing guilt was not overwhelming."

The Court finds that Bell's arguments are without merit and will be denied.

f. *Failure of Appellate Counsel to Appeal the Alleged Erroneous Jury Instructions*

To show that appellate counsel was deficient under *Strickland*, a defendant must do more than allege that counsel failed to raise every non-frivolous issue, insofar as appellate counsel is under no obligation to raise all issues, but may pick and choose so as to maximize the chances of a successful appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome." *Id.* To establish prejudice on a claim for ineffective assistance of appellate counsel, the defendant must show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000) (emphasis in original).

Bell argues that her appellate counsel "was constitutionally ineffective for failing to appeal the erroneous jury instructions." Had appellate counsel raised this issue, according to Bell, "[t]here was a reasonable probability that . . . the outcome would have been different." Memo. at 38.

On appeal, counsel for Bell raised three (3) issues. First, Bell argued that there was insufficient evidence presented at trial to convict her of health care fraud. She next challenged the sufficiency of the evidence as to her conviction for making false statements relating to health care matters as set forth in Count 3 of the Indictment. Finally, she argued that the trial court erred in failing to grant her motion for a new trial based on the government's alleged failure to comply with its disclosure obligations under *Brady*. See *Bell*, slip op. at 3.

The failure to appeal a particular issue does not *per se* amount to representation falling below an objective standard of reasonableness.  For example, counsel may decide to present only his strongest arguments and forego less likely to succeed or marginal claims in the interest of focus and clarity of advocacy. "Appealing losing issues 'runs the risk of burying good arguments . . .  in a verbal mound made up of strong and weak contentions.'  Indeed, the 'process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.' " *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (quoting *Smith v. Murray*, 477 U.S. 527, 536, (1986)).

Bell claims that her appellate counsel was ineffective in failing to appeal each of the previously discussed jury instructions.  Because the Court has found that each of Bell's claims regarding the jury instructions is without merit, her claim regarding the inadequacy of her appellate counsel likewise must fail.  Bell simply has not overcome the presumption that counsel's failure to assert these issues on appeal was an exercise of sound appellate strategy.

Accordingly, the Court finds that Bell's argument is without merit and will be denied.

B.       **Ground Two - Alleged Fifth Amendment Violations[9] - "The Conviction was Obtained and Sentence Imposed in Violation of the Fifth Amendment Right to Due Process of Law"**

Distilled to its essence, Bell's argument is that her Fifth Amendment due process rights were violated by jury instructions that she alleges constructively amended the indictment to conform to the government's proof at trial.

An indictment is constructively amended when jury instructions "broaden[ ] the possible bases for conviction from that which appeared in the indictment." *United States v. Lee*, 359 F.3d 194, 208 (3d Cir. 2004). A constructive amendment deprives a defendant of his or her right to be tried only for those offenses charged by a grand jury, and therefore "constitutes 'a per se violation of the fifth amendment's grand jury clause.' " *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007) (quoting *United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002)); *see also Stirone v. United States*, 361 U.S. 212, 218-19 (1960).

1.       <u>The Jury Instructions Amended the Indictment to Conform to the Government's Proof at Trial</u>

The jury instruction describing the elements of health care fraud was a modification of the instruction on the elements of bank fraud as set forth at <u>2A Federal Jury Practice and Instructions</u>, § 47.11.  The modification was necessary because there was no standard charge for health care fraud in the <u>Federal Jury Practice and Instructions</u>. *See United States v. Hickman,* 331 F.3d 439-445-46 (5th Cir. 2003) (stating that "[a]lthough there is a paucity of

_____

[9]       The Fifth Amendment provides, in pertinent part, as follows:  "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury . . . nor be deprived of life, liberty or property, without due process of law . . . ."

case law interpreting [the health care fraud statute, § 1347], its language and structure are almost identical to the bank fraud statute,  18 U.S.C. § 1344.")  The Court notes that the health care fraud  instructions as presented were essentially the same as those subsequently published in the Third Circuit Model Criminal Jury Instructions for Health Care Fraud - 6.18.1347 - except that the Third Circuit Model Instructions combined elements 1 and 4 as given by this Court.

The Court finds that Bell's challenge to the health care fraud jury instructions is without merit as the Court's jury instructions conformed with the elements of § 1347.  Further, the Court finds that Bell has failed to identify (i) any manner in which the description of elements contained in the jury instructions was defective and/or (ii) how the evidence and jury instructions at trial modified the essential terms of the charged offense.

Accordingly, the Court finds that Bell's argument is without merit and will be denied.

2.    The Indictment Charges a Scheme to Defraud But It is Based on a Theory of Deprivation of the Right to Honest Services Without an Allegation of A Fiduciary Relationship.

Bell appears to  make two (2) separate arguments.  Initially, from the heading only, it appears that Bell claims that the indictment, which charged a scheme to defraud, was based on a theory of deprivation of honest services without any allegation of a fiduciary relationship. This claim, which was not further developed, appears to be the same argument previously advanced and previously rejected by the Court.

Additionally, Bell claims that (i) the government produced no proof of overbilling; (ii) the government showed no failure to provide 2.7 hours of care for each resident; (iii) the government's theory of prosecution does not appear in the indictment; and (iv) that false statements to maintain Medicare / Medicaid certification cannot support a § 1347 conviction.

The Court finds that these arguments also are without merit as they are essentially a sufficiency of the evidence argument - the same arguments which were raised throughout the trial proceedings and subsequently on appeal, and which were consistently rejected by both this Court and the Court of Appeals.  If an issue has previously been addressed on appeal, the petitioner is not entitled to re-litigate the claim in a habeas corpus action.  *See Withrow v. Williams*, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring); *United States v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir. 1993).

Accordingly, the Court finds that Bell's argument is without merit and will be denied.

3.      The Sentence Was Based on Inaccurate Information and False Assumptions

Bell's final argument surrounds an alleged sentencing guideline miscalculation.  Bell claims that her sentence was based on inaccurate information and false assumptions.   Relying on *United States v. Kennedy,* 554 F.3d 415, 419 (3d Cir. 2009), Bell contends that "the district court violated due process when it added +2 levels for vulnerable victim pursuant to USSG 2B1.1(b)(2) where the victim or victims did not suffer pecuniary harm."  Memo. at 45.  Bell further argues that "[s]entencing counsel was constitutionally ineffective for failing to make this argument."  *Id.* at 46.

Bell's reliance on *Kennedy* is misplaced primarily because the Court did not apply any victim enhancement under § 2B1.1(b)(2), although same was requested by the government. Section 2B1.1(b)(2)(A) provides that the offense level should be increased by two (2) levels if the offense "involved 10 or more victims." As the Court explained in its Tentative Findings and Rulings:

> The Court is reluctant, however, to apply an additional enhancement under § 2B1.1(2)(A) (sic) because while the record is clear that a number of residents sustained varying degrees of bodily injury, the record is not crystal clear that the offense involved ten (10) or more victims whose injury is specifically attributable to this Defendant.

Tentative Findings and Rulings, § 18.[10] The Court further noted that Bell was charged in the Indictment with ten (10) counts of false statements in records regarding eight (8) specific residents. However, the jury convicted her of eight (8) of those ten (10) counts in the Indictment which involved a total of six (6) specific residents. *Id.* at 10, n. 3.

The Court did find, however, that a two-level enhancement under § 3A1.1(b) was appropriate because "the defendant knew or should have known that a victim of the offense was a vulnerable victim. . . . " *Id.* at 10 (quoting § 3A1.1(b)(1). As the Court explained in its Tentative Findings and Rulings, the application note for § 3A1.1(b)(1) refers not only to conduct involved in the offense of conviction, but also to any relevant conduct under § 1B1.3. The Court found that the failure "to provide the required care, services and environment" to the

---

[10]    The Court recognizes that in order to apply a 2-level enhancement under § 2B1.1(b)(2)(A), the "victims" under § 2B1.1(b)(2)(A) must have suffered a pecuniary harm that resulted from the offense. *United States v. Kennedy*, 554 F.3d 415, 420 (3d Cir. 2009). However, as our appellate court explained in *Kennedy,* while a person may not "satisfy the definition of 'victim' under § 2B1.1(b)(2), this does not mean that they are not 'vulnerable victims' under USSG § 3A1.1(b)(1). *Id.* at 423.

residents of Atrium was clearly conduct underlying the offense of conviction and, thus, qualified as "relevant conduct." Accordingly, the Court found that a 2-level enhancement under § 3A1.1(b) was appropriate. Bell has presented nothing in her § 2255 filings which persuades the Court to reconsider its original decision.

Bell also argues that her sentencing counsel was "constitutionally ineffective for failing to direct the Court's attention to the State case, and argue for application of 5G1.3(b)." Response at 19. In support of her position, Bell relies on *Blount v. United States*, 330 F. Supp. 2d 493 (E. D. Pa 2004), a case which has a factual situation completely different than that of Bell's.

In *Blount*, when the federal indictment was returned, the defendant was serving a Pennsylvania state sentence of two to five years and a Philadelphia County sentence of eleven to twenty-three months on unrelated charges. Defendant successfully argued in his § 2255 motion that his counsel was ineffective for failing to request a downward departure to give Defendant full credit for time already served in state custody.

In the case at bar, at the time of sentencing the Court was well aware that Bell had two cases pending in the Court of Common Pleas of Allegheny County. The charges included Involuntary Manslaughter, Neglect of Care-Dependent Person, Recklessly Endangering Another Person, and Criminal Conspiracy relating to the death of Mabel Taylor at Atrium. Also pending were two counts each of Theft by Unlawful taking, Theft by Deception, and Theft by Failure to Make Required Disposition of Funds. Significantly, at the time of sentencing, neither of the state cases had gone to trial and Bell was not in custody on the state charges. In

fact, Bell was not sentenced on her state charges until February 12, 2007, approximately four (4) months after she had been sentenced in this Court.

Accordingly, § 5G1.3(b) was not applicable at the time of Bell's sentencing and the Court finds that her sentencing counsel's failure to argue for application of same did not render his performance deficient.

For these reasons, the Court finds that Bell's argument is without merit and will be denied.

## Conclusion

For the reasons stated, the Court will dismiss Bell's motion without an evidentiary hearing.   The Court finds that Bell has failed to establish either prong of *Strickland*: (i) that her attorney's representation fell below an objective standard of reasonableness and/or (ii) that counsel's errors, if any, deprived her of a fair trial.  Moreover, the Court finds that Bell has failed to overcome the presumption that her trial attorney and/or appellate attorney rendered reasonable professional performance.

For all these reasons, Bell's motion will be denied in its entirety.

## Certificate of Appealability

Upon the denial of a section 2255 motion by the district court, an appeal to the Court of Appeals is not permitted unless the petitioner obtains a certificate of appealability from "a circuit justice or judge." 28 U.S.C. § 2253(c).  "At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a

certificate of appealability should issue." United States Court of Appeals for the Third Circuit Local Appellate Rule 22.2.  The application for such a certification should therefore be made to the district court in the first instance.  *See United States v. Williams*, 158 F.3d 736, 742 n. 4 (3d Cir. 1998).

The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to establish the denial of a constitutional right, the mere allegation of a constitutional wrong, such as deprivation of the rights to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal.  *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds that reasonable jurists would not find this Court's assessment of Bell's claims debatable or wrong.  Thus, the Court will not issue a certificate of appealability.

An appropriate Order follows.


McVerry, J.


33

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 04-cr-0212 |
| | ) | 02: 09-cv-0739 |
| MARTHA BELL | ) | |

**ORDER OF COURT**

     **AND NOW**, this 3rd day of May, 2010,  in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

     1.    Bell's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28,

United States Code, Section 2255 is **DENIED AND DISMISSED**; and

     2.    A certificate of appealability is not granted because Petitioner, Martha Bell,

has not made a substantial showing of the denial of a Constitutional right.


                           BY THE COURT:



                           s/Terrence F. McVerry
                           United States District Court Judge


cc:     Cheryl J. Sturm, Esquire
         Email: Sturmcj@aol.com

         Leo M. Dillon,
         Assistant U.S. Attorney
         Email: Leo.Dillon@usdoj.gov